Argued March 5, affirmed March 24, rehearing denied June 2, 1914.

# SCHALLER *v.* PACIFIC BRICK CO.*

### (139 Pac. 913.)

**Master and Servant—Injury to Servant—Actions—Sufficiency of Evidence.**

1. In an action for injuries to a servant, evidence *held* to tend to show that the accident was occasioned by some insecurity in the brakes or clutches used for stopping and starting the machine operated by plaintiff.

> [As to liability of master to servant for injuries due to defective machinery or materials, see notes in 77 Am. Dec. 218; 98 Am. St. Rep. 289, and see notes in 92 Am. Dec. 213; 21 Am. Rep. 579; 34 Am. Rep. 621; 54 Am. Rep. 726; 57 Am. Rep. 727.]

**Master and Servant—Injuries to Servant—Action—Admissibility of Evidence.**

2. In an action for injuries to a servant caused by the unexpected starting of the machine which he was operating, testimony that the only way of locking the machine to prevent its going into the gear was a piece of rawhide hanging upon it was relevant.

> [As to unexplained starting of machine, whereby employee is injured, as warranting inference of negligence on part of the employer, see note in Ann. Cas. 1912D, 541.]

**Witnesses—Cross-examination—Scope and Extent.**

3. In an action for injuries to a servant from the unexpected starting of the machine operated by him, cross-examination of witnesses by plaintiff's counsel as to whether the machine was intended to be operated by stopping between every operation, and as to the practicability of constructing a locking device that would hold the lever controlling the gear, wherever it was set, was not ground for reversal.

**Trial—Injuries to Servant—Actions—Instructions.**

4. In an action for injuries to a servant, an instruction giving a complete statement and almost a quotation of the employer's liability law, which might have been misleading as inducing a verdict on defects or omissions not alleged in the complaint, was not erroneous, when considered in connection with other instructions that the jury should only consider whether the defendant was negligent in the particular respect set forth in the complaint, and that plaintiff must establish that the machine started up in the manner claimed, and that

---

*On the question whether the unexplained starting of machinery is evidence of negligence, see note in 44 L. R. A. (N. S.) 1050. And upon the presumption of negligence of the master from the unexplained starting of machinery injuring servant, see note in 1 L. R. A. (N. S.) 298.

For authorities on the question of abrogation of defense of assumption of risk by federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 62.                                                    REPORTER.

it was caused so to do by reason of the machine being out of repair in the respects alleged in the complaint, and specifically enumerating the defects and claims of negligence mentioned in the complaint.

**Master and Servant—Injuries to Servant—Assumption of Risk—Employers' Liability Law.**

5.  In actions brought under the Employers' Liability Act (Laws 1907, p. 302), the defense of assumption of risk is not available.

[As to assumption of risk by servant on failure of master to perform statutory duty, see note in Ann. Cas. 1913C, 210.]

From Yamhill: PERCY R. KELLY, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action by Roy Schaller against the Pacific Face Brick Company, a corporation, for personal injuries sustained by plaintiff while operating a dry press brick machine in defendant's factory. The circumstances out of which the injury arose are stated in the complaint in the following language:

"That on, to wit, the 15th day of November, 1912, and for some time prior thereto, the above-named plaintiff was in the employment of the said defendant corporation as an operator of a certain dry press brick machine in said defendant's factory hereinabove mentioned, in Yamhill County, State of Oregon; * * that at and during the times above mentioned the said defendant carelessly and negligently failed to keep said brick press machine in repair and in good running order, in that one of the cogs on a certain gear wheel of said machine was broken off and missing, and other cogs on said wheel were badly worn and defective, and in that the clutches and brakes on said machine were loose, insecure, and defective, and that, by reason thereof, when the lever which controlled the motive power of said machine was moved or operated for the purpose of throwing the said machine out of gear and bringing it to a stop, said machine, after it was brought to a stop, would and did at various times suddenly and unexpectedly go into gear and into operation; that, by reason of the said defects hereinbe-

fore alleged, said machine on the said 15th day of November, 1912, and for some time prior thereto, became and was in a dangerous, insecure, and defective condition, all of which was well known to the said defendant company, but that, notwithstanding such knowledge on the part of said defendant, it carelessly and negligently permitted, allowed, and directed that said machine be used and operated, without due regard for the safety or welfare of the plaintiff herein; * * that on, to wit, the 15th day of November, 1912, said plaintiff, while in the employment of said defendant company, as aforesaid, and in obedience to the orders and directions of said defendant, put his right hand into the said machine, while it was out of gear and not in operation, for the purpose of filling the dies thereof with clay and earth, and that, while plaintiff's said hand was in said machine, as aforesaid, the said machine, by reason of the defects hereinbefore alleged, suddenly and unexpectedly went into gear and operation, and thereby crushed, bruised, and injured the flesh, muscles, nerves, tendons, and bones, of plaintiff's said hand and arm; that plaintiff, by reason of said injuries, does now suffer, and ever since said injuries were received has suffered, great physical pain and mental anguish, and is permanently injured and disfigured.''

The machine is described in defendant's brief as follows:

''It may be defined as a machine which presses and molds loose clay into bricks. The loose clay enters at the top of the machine and, passing through it, descends into charger boxes or molds, where it is, by means of dies or plungers, compressed into bricks. Four bricks are made with each completed operation of the machine. The motive power is steam. To the left of the machine, as the operator faces it, the court will notice a drive wheel encircled by a belt. What is known as a friction clutch operates in conjunction with said drive wheel, thereby supplying or shutting off the steam motive power. Two pairs of wooden clutch

blocks, one pair being upon each side of said wheel, and being so shaped as to conform to the contour of the rim thereof, act in connection with the same. One of each pair of said clutch blocks is adjacent to the outside surface of the rim of said wheel, and the remaining clutch block in each pair is adjacent to the inside surface of the rim of said wheel. The clutch blocks are of appropriate length, so that, when applied, they form sufficient contact along the surface of said wheel to engage and bind upon it. When the operator desires to start the machine or to throw it into gear, he pushes the hand lever, shown on the exhibits, toward his right and over against the body or framework of the machine. This causes the clutch to move over to his left, and also causes the clutch blocks to close together and bind upon the rim of the drive wheel, and, when the drive wheel is thus sufficiently engaged, it connects the steam power and puts the machine in motion. When the operator desires to disconnect the steam power or to throw the machine out of gear, he pushes the lever over toward the left. This causes the clutch to move over to the right, and also causes the clutch blocks to separate or spread apart and to cease to bind upon the rim of the drive wheel, thereby disengaging the drive wheel and shutting off the steam power. When the lever stands at neutral or on center the clutch blocks are not in contact with the drive wheel; therefore no connection is formed with the steam power, and the machine is at rest.''

The court, over the objections of defendant, permitted plaintiff to ask one Charles Gustafson, one of plaintiff's witnesses, the following question: ''When you began operating the machine there immediately after the injury, what, if any, method was there of locking that machine so that it would not go into gear or operation or the dies descend after the hand was put in there to pack the clay?'' To which the witness answered: ''There was nothing, only a piece of raw-

hide hanging there, but, whether that was used for that, I could not exactly say." And allowed plaintiff's counsel, upon the cross-examination of M. A. Nicol, one of defendant's witnesses, to ask the following questions:

"Q. As a matter of fact, that machine was never built or intended to be operated there in the way that it was used, by stopping every time and pressing in the clay with the hands, was it?

"A. I could not say that it was built for that. * *

"Q. Yes, sir; but the manufacturer of that particular machine made it as a dry press machine, did he not, with the expectation it would be used with dry clay, and that no man would pack those with his hands?

"A. As I understand the difference between a dry press brick and a dry press machine is that one of the machines operates with clay that is moist, but is not a mud. There is another machine that is known as a soft mud machine. That handles a clay that is a real soft mud, and then there is a soft mud machine. * *

"Q. Is that why they cut out their drying drum up there?

"A. Oh, no. * *

"Q. Well, why was it, then; why did they stop drying the clay?

"A. The clay dryer—I was there when they operated this clay dryer. I have been there for four years almost; and they were working with practically surface clay, very plastic, as you would understand, sticky clay, up in the top of the mine. It was sticky, and they used this dryer to take that stickiness out of the clay. As they got deeper in the mine, they got into harder clay. Some of it was very hard, almost rock; and by mixing that almost rock with the very sticky clay, we had the desired plasticity or stickiness, as we would term it. You would term it stickiness; we would term it plasticity. By mixing this rock, you might call it, with the mud, it would produce the desired plasticity of the clay and, therefore the dryer was not needed any more."

70 Or.—36

The court also, over defendant's objection, allowed plaintiff's counsel to ask one A. W. Billings the following questions, upon cross-examination:

"I will ask you, if, independently of those notches, it would be practicable to have a locking device on that lever that is set over there, so that it would hold it securely in place?

"A. I think I understand that by answering I don't think it is necessary.

"Q. I didn't ask you that question. I asked you if it was practicable to construct a locking device that would hold that lever wherever it was set? Is that practicable?

"A. Well, that is pretty hard for me to answer. Of course it could be done. You asked me if it was practicable?

"Q. Practicable to do that; yes, sir.

"A. No, I don't think it would be.

"Q. How much would it cost? Is it too expensive?

"A. Simply for the reason that a locking device there is not necessary; and another reason, a locking device would hinder the operator's manipulation of the lever.

"Q. Did you ever see the levers by which gang edger saws are set and moved from place to place?

"A. Some special lever, did you say?

"Q. Did you ever see the levers by which gang edger saws are set and moved from place to place?

"A. Well, I wouldn't say that I did. I suppose I know what they are.

"Q. Yes; have you ever seen levers with a little hand-hold underneath that work with a spring; that is, to lock either through friction against a piece of metal or through a notch or a hole in which a pin is inserted? Did you ever see one of that kind?

"A. Yes, sir; I have seen them.

"Q. Would you say it was not practicable to put some locking device of that kind on that arm which extends out from the machine, on which the lever rests?

"A. Well, I really forgot whether I said it was im-

practicable or not. If I said it was impracticable, I would say again it is unnecessary; but I forget whether I said it was impracticable.

"Q. Now, Mr. Billings, that machine was, as a matter of fact, not intended to be thrown in and out of gear every time four bricks are made, was it?

"A. I would judge, in my opinion, if that is correct, that that is to be thrown off and at any desirable time the operator wishes. * *

"Q. It is intended, of course, that he may have it under his control by the use of this lever; that is, he can stop the operation of the machine whenever he wishes to stop the manufacture of brick for any reason; but to get down again to your opinion, I say, in your opinion, it is not intended, is it, that a machine of that character shall be thrown out of gear and into gear for every four brick that is made? Is not that subjecting the machine to use for which it is not intended, and thereby imposing unnecessary wear upon the brakes and the gear?

"A. I could answer that both ways, and be justified in answering it that way, depending upon the quality of material they were using in it. In one instance, they, of course, would not intend—it would not be necessary, and you don't want to stop it, when the charges fill—when the molds will fill, it is not anyone's desire to stop it every four brick; and the machine is there to do the work that is to be done, and, if it is necessary to be stopped every four brick, that machine is there to do it."

The court also gave the following instructions, which were excepted to by defendant:

"The law of this state makes it the duty of all owners, corporations, and persons engaged in the operation of, or having charge of, any machinery to see that all metal, wood, or other material whatever shall be carefully selected and inspected and tested so as to correct any defects, and that all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery per-

mits, and, generally, that all owners and other persons having charge of, or responsible for, any work involving a risk or danger to the employees of the public, shall use every device, care, and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other device or apparatus, and without regard to the additional cost of suitable material or safety appliances and devices. * * Negligence may be defined to be the doing of something expressly forbidden and prohibited by law, or the failure to do that which the law expressly commands and requires, and, in the absence of any express requirement of the law, the test of whether a person has been negligent or not is applied by determining whether such person is shown to have done something which an ordinarily prudent person would not have done under the same circumstances, or whether such person has been shown to have failed to do that which a person of reasonable and ordinary care would do under similar or like circumstances. * * I have said that the law expressly provides that all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and that all owners or persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public shall use every device, care, and precaution which is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, apparatus, or device, and without regard to the additional cost of suitable material or safety appliances and device; and this is the express provision of the law. It becomes a question of fact in this case, gentlemen of the jury, which you will have to determine from the evidence, whether or not it has been shown that the machinery employed by the defendant company was dangerous machinery, before you would be authorized to apply the rule with regard to what would constitute negligence under this express provision of the law to the

case which you are trying. If you find that the same constitutes dangerous machinery, then the express provision of the law would be applicable, in so far as the evidence disclosed a compliance therewith or a failure to comply therewith upon the part of the defendant. And it also is a question of fact as to whether or not the work which is disclosed by the evidence to have been conducted by the defendant in this case involved a risk or danger to the employees, before you would be justified in applying to this case the rule with regard to what constitutes negligence in cases where there is an express provision of the law, and the express provision of the law to which I have called your attention, in determining whether or not the defendant was negligent, and in case only that you find that the work involved risk or danger to the employees or the public, would you be justified in applying this express provision of the law."

The defendant submitted requests for instructions substantially covering the common-law doctrine of assumption of risk, which were refused by the court. The plaintiff had a verdict, and, from the judgment thereon, defendant appeals.                    Affirmed.

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. A. M. Dibble.*

For respondent there was a brief with oral arguments by *Mr. Oscar Hayter* and *Mr. H. H. Belt.*

Opinion by Mr. Chief Justice McBride.

1. It is urged by defendant that there is no evidence to justify the verdict, for the reason that the injury suffered by plaintiff is not shown to have been the result of the defects in the machine which are set forth in the complaint. But there is certainly some testi-

mony given by plaintiff tending to show that the accident was occasioned by some insecurity in the brakes or clutches used for stopping and starting the machine. It either arose from this cause, or was occasioned by the plaintiff's putting his hand under the dies while the machinery was in motion, which he swears positively he did not do. It seems hardly probable from the testimony that the fact that the brakes and clutches were loose, or that a cog or two had been broken, brought about the injury; but the allegation that the clutches were insecure embraces any defect in them or in their operation which rendered the machinery liable to start up automatically after being stopped. That such a defect existed seems possible and perhaps probable from the testimony, and we have no right to disturb the finding of the jury on that subject, where there is any evidence to sustain it.

2. We think that the evidence of Nicol that the only way of locking the machine to prevent its going into gear was a piece of rawhide hanging upon it was relevant. It had a tendency to show that the appliance for holding the lever and clutches in place was a makeshift, and to establish a probable theory of insecurity of the devices for stopping and starting the machine.

3. We see no substantial error in the ruling of the court upon the cross-examination of the witnesses Nicol and Billings. It tended to explain the general character, construction, and operation of the machine in question, and to place the jurors in a position to be able to judge more expertly of the evidence showing the particular circumstances attending the injury. Perhaps the examination strayed a little from the straight and narrow path, but, in the hurry of a jury trial, it is unreasonable to expect that a circuit judge will always observe mathematical accuracy in defining

the limits beyond which counsel may not go in such matters. Our circuit judges, when a jury case is upon trial, are called up to rule in a moment upon the most delicate questions relating to the admission or rejection of testimony; and for us to weigh their decisions made under such circumstances by the technical rules of logic and law would result in the reversal of half the cases tried by them. We should rather adopt the advice of the poet, "Be to their faults a little blind, and to their virtues very kind," and reverse only for such errors as appear to have worked actual injustice.

4. The instructions quoted in appellant's brief, taken alone, would have been misleading to the jury. They amount to a complete statement and almost a quotation of the employees' liability law. In the abstract, they state the law correctly, but applied concretely to the case then on trial, they might have been so misleading as to have induced a verdict upon other defects or omissions not alleged in the complaint. However, the court in other portions of its charge very carefully limited and explained the relation of the liability act to the particular matters charged in the complaint. The following excerpts from the charge show to what extent the general language used by the court, and urged here as error, was qualified and explained:

"In determining whether or not the defendant was negligent, you should only consider whether the defendant was negligent in the particular respects set forth in the complaint, and you are not to consider whether or not the defendant may have been negligent in some other particular which is not alleged or specified in said complaint. * * The burden of proof is upon the plaintiff to establish by a preponderance of the evidence that he was injured in the way and manner described in the complaint, and, unless you so find, your verdict should be for the defendant. If you find and believe from a preponderance of the evidence that

the machine which plaintiff was using was out of repair, or defective, in the respects charged in the complaint, but you should fail to find from a preponderance of the evidence that the said condition of the said machine caused the same to start up after it had been brought to a stop, and to thereby occasion the accident, the plaintiff cannot recover, and your verdict should be for the defendant. The contention of plaintiff is that after he had thrown the machine out of gear and stopped the same, and thereafter put his hand in the machine for the purpose of filling the dies thereof, that the machine suddenly and unexpectedly, and without act on his part, went into gear and operation, thereby causing the accident. Before plaintiff can recover, he must establish to your satisfaction by a preponderance of the evidence that the machine did start up in the manner claimed, and also that it was caused so to do by reason of the machine being out of repair in the respects alleged in the complaint.''

In another portion of the charge the court specifically enumerated the various defects and claims of negligence mentioned in the complaint, and instructed the jury to confine its investigations to these exclusively. So that, taking the charge as a whole, it seems improbable that the jury could have failed to understand that their investigations should be confined to those defects and matters of negligent omission charged in the complaint.

5. The instructions in regard to assumption of risk were properly refused. In actions brought under the Employers' Liability Act (Laws 1907, p. 302), the defense of assumption of risk is not available: *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524, 22 L. R. A. (N. S.) 634); *Love* v. *Chambers Lumber Co.,* 64 Or. 129 (129 Pac. 492); *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351).

While the evidence in this case is very contradictory, yet upon appeal we are compelled, under the peculiar provisions of our amended Constitution, to assume, after verdict, that all testimony of a prevailing party as to conditions which are not morally or physically impossible is true; and, if conditions so established will sustain the verdict of a jury, we are not at liberty to disturb it. There being no substantial error of law, and the jury having found the facts, the judgment must be affirmed.                    AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE RAMSEY and MR. JUSTICE McNARY concur.