Argued October 12, affirmed November 9, 1960

# WILSON *v.* HANLEY ET AL

356 P. 2d 556

*Paul F. Geddes*, Roseburg, argued the cause for the appellants. On the briefs were Geddes, Felker, Walton & Richmond, Roseburg.

*Thomas H. Tongue*, Portland, argued the cause for the respondent. On the brief were Avery W. Thompson and Bernau & Wilson, Roseburg.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Howell, Justices.

SLOAN, J.

Plaintiff was awarded a verdict for bodily injuries he sustained when injured in the course of his employment by defendants. The latter appeal. The assignments most relied on result from the refusal of the

trial court to allow defendants' motion for a directed verdict and related motions requesting that specifications of negligence be withdrawn from jury consideration. The issues are, therefore, factual.

■ On and before June 28, 1957, the date of the accident in which plaintiff was injured, defendants were engaged in a rather extensive log hauling operation for one of the large timber companies. The initial part of the log haul was on private roads so that regular legal load limits were not required. At the termination of the private road defendants established a reload area. Here, some of the loads were legalized for the remaining haul over public roads. This was accomplished by dumping some of the loads completely and reloading them. Weight limits for other loads were made by removing one or more of the logs from the load. Defendants were operating about seventeen trucks at the time. They made every effort to speed up the loading and unloading process, including direct orders to violate provisions of the safety code. We will revert to this violation later.

On the date of the accident plaintiff was employed as a loader and unloader in this reload area. The accident which injured plaintiff occurred when a log fell from a load of logs that was to have been fully unloaded and when plaintiff was helping to do that job.

When the loaded log trucks entered the reloading area the ones that were to be fully unloaded were driven to a log dump. The truck was driven along side a brow log. A power shovel was situate near the brow log. One end of unloading straps was fastened to the brow log. When a truck was placed for unloading the defendants' employees, including plaintiff, were required to crawl under the loaded log trailer, take the unloading straps that were fastened to the

brow log underneath and then over the loaded logs and fasten the other end of the unloading straps to the power shovel. The power of the shovel was then used to pull the logs off of the trailer.

The safety code adopted by the State Industrial Accident Commission which governed an unloading process of this kind required:

"7.15 A positive safeguard shall be provided to prevent logs from leaving the load from side opposite the dump.

"7.16 In unloading logs, the unloading line shall be attached and tightened, or other positive safeguard securely placed before the bunk or binder chains are released."

The wisdom of these rules is obvious to anyone familiar with the hazards which exist in unloading logs from a trailer.

We have already mentioned that defendants' operation was a high speed one. Defendant Post testified that as soon as the truck was brought up to the brow log, or when waiting its turn to unload, the drivers were ordered to immediately remove all but one binder chain and not wait until the loading straps were placed as required by the safety code. On some loads the drivers were required to remove all binder chains in advance of unloading. He testified that he could save thirty or forty minutes a day by requiring this unlawful unloading process. Other witnesses testified that defendants required all of the binder chains to be removed before the unloading process began except on those loads in which the hazard was too apparent. It is really immaterial whether defendants ordered all of them removed or, as defendants claimed, all but one to be removed. Either was a direct violation of the code.

The truck from which the log fell which injured plaintiff arrived at the unloading dump at a time when plaintiff and the head loader were loading another truck. When the driver of the offending load stopped at the brow log he immediately released the rear of two binder chains which restrained this particular load. The driver then stood beside the cab of his truck awaiting the unloading crew.

Plaintiff testified that when he had finished loading the truck he was working on he hurried to the truck then waiting at the loading dump. He went under the log trailer to get the loading straps at the brow log. While he was under the trailer defendant Post called to him to return to the loading area and help load other waiting empty log trucks before proceeding to unload the truck he was then under. When he came out from under the trailer and started to his other assignment the top log on the trailer fell, hit the plaintiff and pinned him to the ground. He was seriously injured.

The driver of the truck, who said he was standing on the same side of the truck as that where plaintiff was injured, testified that the remaining binder chain fell at his feet just before the log fell. He did not see who removed the chain; he denied that he had removed it; nor did he actually see the log fall. He was looking in the other direction at that instant of time. In addition to the plaintiff and the driver, the only other person who apparently was near enough to the trailer to have removed the remaining one binder chain was the head loader. He did not testify. Plaintiff denied that he removed it. The jury's verdict requires us to accept that as true. The jury may have inferred that the driver had removed it or that it was not released at all and that it was the removal of the first binder

chain that caused the accident. The evidence would justify either inference.

As we view the case, it was immaterial who removed the remaining binder chain, if in fact it was removed. The causal conduct which led to the accident began when the first binder chain was removed in violation of the safety code. The removal of the second binder chain, if removed, only adds to the original vice. Even if plaintiff had removed the chain it would only be contributory negligence on his part, and if the jury found contributory negligence we must assume that it reduced its verdict accordingly. The jury was so instructed. But, more likely, the jury found plaintiff was acting on the orders of defendants and that plaintiff was not negligent.

Defendants argue that plaintiff was a vice-principal. The evidence that defendant Post ordered the employees to violate the safety code dispels that argument.

It is also contended that there was no evidence that either the driver of the truck or the head loader knew of the order to remove the binder chains before the load was secured by the load straps. This argument must also fail. As we have previously pointed out, the negligent conduct which caused plaintiff's injury began when the driver removed the first binder chain. The driver was an employee of defendants. Although the driver said that he had not received the orders from defendants before mentioned to remove binder chains, the fact is that he did in this instance and testified that he usually removed all of the binder chains while waiting to unload. The driver's testimony as to his actual conduct and the testimony of defendant Post would have been most persuasive to the jury that the defendants' orders with respect to the binder

chains were known to all of the employees. Post testified on direct examination:

> "A We have always had a rule which was when we started there in January of 1957 that when trucks come off the mountains, if the load was a safe load, if they had to wait, that all binding chains would be removed but one. And then, if the load didn't look good, to leave two chains on; but there is one exception to this rule that has happened several times. If it is a good tight load, three-log load, the truck driver—by the way, the truck driver is the one that used their judgment on these loads, and they have come through that reload on several occasions without any chains on a good three-log load or a good-saddled load. And the instructions were never altered at any other time.

> "Q Do you recall giving these instructions to Mr. Greer, for example?

> "A I think that every man that was there originally had those instructions given to him."

Defendant, on cross-examination, also testified that he had reprimanded the drivers for failing to remove the binder chains when a driver was waiting to unload; that he had heard the boss of the reloading area tell the drivers to remove the chains. The jury would have been justified in finding that all of the employees were made emphatically aware of defendants' rule.

The conflicts in the evidence as well as the permissible inferences that could be drawn from all of the evidence required that the case be submitted to the jury.

■ The two specifications of negligence which defendants requested be withdrawn were:

> "1. The defendants gave instructions and orders to the employees of the defendants prior to the accident herein mentioned to detach and release the

bunk or binder chains from loaded logs upon the trucks and trailers arriving at the unloading area before the unloading lines were attached and tightened so that there may be accomplished a faster operation.

"2. The defendants failed and neglected to attach and tighten the unloading lines on the unloaded logs upon the particular truck and trailer from which rolled the log which caused the accident above specified before the bunk or binder chains securing the logs on the said load were released."

■ With respect to the first specification defendants claim that there is no evidence that the removal of the binder chains was the proximate cause of the accident. This is much the same as arguing that an obvious failure to erect a scaffold according to lawful requirements would not be evidence of the cause of its collapse. We need only say that the very purpose of the safety code was to prevent the kind of accident that happened here. It is more probable than not that the removal of the binder chain or chains was the proximate cause of plaintiff's injury. To hold otherwise would nullify the positive mandate of the safety code. It was for the jury to decide if the defendants' orders to violate the safety code had a causal bearing on the plaintiff's injury. *Eitel v. Times, Inc.,* 221 Or 585, 352 P2d 485; *Ludwig v. Zidell et al,* 1941, 167 Or 488, 118 P2d 1073.

■ As to the second specification defendants argue that there was no evidence which connected defendants with the alleged failure to place the loading lines. Plaintiff was starting to connect the loading straps when he was called from under the trailer and met the accident which befell him. He should not have been permitted or required to begin the unloading operation unless all binder chains were still in place.

It was defendants' nondelegable duty to have the loading straps in place and tightened before any of the binder chains were removed.

We conclude that the trial court did not err when it refused to direct a verdict and to withdraw the specifications of negligence.

■ Another unrelated assignment concerns an exception to an instruction given by the court. The instruction complained of instructed the jury in the language of the "and generally" clause of the Employers' Liability Law. ORS 654.305. It is claimed that the only specification of negligence which would have supported the giving of the instruction had been withdrawn. The exception taken to the instruction was that "the jury might gain the impression, * * * that perhaps the 'and generally clause' did apply and the two specifications of alleged negligence might therefore be employed and amplified upon by that 'and generally clause'."

The exception taken does not point out any proper basis for the court to refuse to give the instruction. Assuming, however, that it was error and properly excepted to, it is difficult to see how the defendants could have been prejudiced. It is necessary to again repeat that when defendant Post ordered the employees to violate the safety code he did, in different words, order them not to use every "device, care and precaution which [was] practicable to use for the protection and safety of life and limb, * * *." It is difficult to see how an instruction in the language just quoted could in any way have added to defendants' own evidence of their culpability.

Other instructions given by the court clearly explained the issues the jury was called upon to decide. If anything, some of the instructions were more

favorable to defendants than they were probably entitled to. There was no prejudicial error in giving the instruction. *Hornby v. Wiper*, 1936, 155 Or 203, 211, 63 P2d 204; *Schaller v. Pacific Brick Co.*, 1914, 70 Or 557, 139 P 913.

Error is assigned as to the giving of one other instruction. However, what we have said about the question of proximate cause disposes of the assignment.

The judgment is affirmed.