PETERSON *v.* UNDERWOOD, Surviving Mother
of John A. Rosenbalm, Infant

\* \* \*

UNDERWOOD, Surviving Mother of John A.
Rosenbalm, Infant *v.* PETERSON

[No. 340, September Term, 1969.]

*Decided May 6, 1970.*

10

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*Louis G. Close, Jr.,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for Christine M. Peterson, appellant.

*Samuel D. Hill,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for Virginia Underwood, surviving mother of John A. Rosenbalm, infant; and *Delverne A. Dressel,* with whom was *Emanuel H. Horn* on the brief, for Norman Peterson, appellee.

DIGGES, J., delivered the opinion of the Court.

In 1959 a masonry wall was built along the rear boundary of 121 North Duncan Street in Baltimore City. On May 26, 1964 it collapsed, causing the death of a five year old boy, John A. Rosenbalm. Whether the negligent construction of this wall caused it to collapse is the gist

of this appeal. The infant's surviving mother, Virginia Underwood, brought a wrongful death action in the Circuit Court for Baltimore County. In an amended declaration she charged that Christine M. Peterson and Norman Peterson, the successive owners of the property, had negligently constructed the wall, and had negligently failed to inspect and repair it. After a trial in which the jury returned a verdict for plaintiff against both defendants, the trial court granted a motion n.o.v. in favor of Norman Peterson. A similar motion by Christine M. Peterson was denied. Virginia Underwood has appealed the judgment in favor of Norman, and Christine has appealed the judgment against herself.

The accident in this case occurred in the rear yard of the Peterson property. At the time of the wall's collapse it is undisputed the entire premises were owned by Christine M. Peterson and demised under an oral lease to Charles Thomas and his wife Lillie M. Thomas. The Thomases had begun renting the premises in 1959, at which time Norman Peterson was the owner and lessor. Living with them until about 1962 were Mrs. Thomas' sister, Virginia Underwood and her son John Rosenbalm. Shortly after occupancy by the Thomases, Norman Peterson removed a dilapidated wooden fence which separated the rear yard from an alley three feet wide. In its place a wall one block thick approximately eight feet long and fifty-six inches high was constructed. It consisted of seven courses of masonry blocks bound together by one-half inch mortar joints. Each block measured 8 x 8 x 16 inches and contained three hollow cells. The evidence is conflicting whether Norman actually participated in building the wall, but as owner of the premises he contracted for its construction. No action was brought against the contractor or the tenant by Mrs. Underwood.

The rear neighbor, Mr. Willis, testified there were cracks in the blocks themselves on the alley side of the wall, that it leaned approximately ten to twelve degrees inward toward the Thomas house, and that these defects became apparent right after the wall was constructed.

Although he testified in his opinion the wall was of shoddy construction, he made no mention of this observation to either the owners or tenants of the property. The Thomases testified that on the yard side there were no cracks visible, the wall did not lean inward, and they noticed nothing unusual about it. The apparent discrepancy in this testimony is explained by the rather incredible fact that the Thomases and Willises, neighbors across a three foot alley, never found occasion during five years to speak to one another. Further, although an opening for a gate had been provided at one end of the wall the Thomases never ventured into the alley. Norman Peterson testified that he observed only one crack near an end of the wall, on the alley side. All witnesses agreed that this was a free standing wall, unconnected and unanchored to any other structure. The rear yard was covered with concrete and the wall was built on top of this without any other foundation.

After the wall had been built, Norman sold the property in December 1959 to Christine, his mother. There was no evidence that either Christine or Norman ever inspected the wall in detail or made any repairs to it. No complaints were made to the Petersons about any defects, and the stability of the wall seems to have been unquestioned until the day it collapsed, except by Willis to the extent already indicated. Some time after construction a clothesline pole in the shape of an inverted U was inserted into the wall, apparently at the request of the Thomases. Exactly how this pole was inserted is not clear, but it appears that its legs were placed down into the hollow cells of the blocks. Clotheslines were attached to this pole, but there is no showing that its presence made any noticeable change in the stability of the wall. There was testimony by the tenant Charles Thomas that children played on top of the wall occasionally and used the clotheslines for a swing.

On the day of the accident John Rosenbalm had come to visit and was sent into the yard by Mrs. Thomas to play with two young friends. Mrs. Thomas and Mr. Willis

testified they observed the youngsters almost immediately prior to the accident and none of them was climbing on the wall or pulling on the clotheslines. Mrs. Thomas had brought John a pepsi-cola at his request. She had just returned to the house and gone to the second floor when she heard a crash. Most of the wall had collapsed inward although the bottom course of masonry blocks did not overturn and appeared to be undisturbed. Mr. Willis was at the second floor window of his house, directly across the alley from the Thomas house. He had glanced out of his window and seen the children playing in the Thomas yard about a minute before he also heard the crash. He rushed over, and the other boys told him there was a boy under the blocks. He pulled off the blocks and found John dead.

The appellant Virginia Underwood introduced into evidence several sections of the Baltimore City Building Code and produced an expert witness, Nathan R. Lawrence, general superintendent for a construction company. The effect of this evidence was to show that the wall had not been constructed in accordance with the requirements of that Baltimore City Building Code. Lawrence testified because of this violation the construction was not of a workmanlike manner, or in conformity with standard practice in the trade. Specifically, it was shown that the wall had no steel reinforcing rods, no buttresses or pilasters, and no subsurface footing. There was further evidence that the wall was built on a slight angle, and that insertion of the clothes pole and lines would add some lateral pressure on the wall. Another building code section was introduced which required, exclusive of construction standards, that all fences be maintained in good repair by the owners. The court correctly instructed the jury that the term fences includes walls. *Cruciano v. Ceccarone,* Del. Ch., 133 A. 2d 911, 912 (1957). Webster's *New International Dictionary* (2d ed. unabridged). There was no evidence of any change in the condition or appearance of the wall between a period shortly after its construction and the time of the crash over four years

later—with the exception of the addition of the U-shaped clothesline pole already mentioned.

Several contentions are urged in this appeal and cross-appeal. The result sought by plaintiff Underwood is to hold both defendants liable while defendant Christine seeks to exonerate herself. In the view we take of this case, it is unnecessary to consider each contention separately. Much stress is laid on the question of when the respective liabilities of the successive owners began and ended. We think the question of who caused the accident is subordinate to the question of what caused the accident. In our opinion plaintiff failed to show, prima facie, the cause of the wall's collapse.

The law applicable to cases such as the one before us was stated in *Austin v. Buettner*, 211 Md. 61, 70, 124 A. 2d 793 (1956). There we said:

> "It is the rule in this state that the mere violation of a statute will not support an action for damages, even though it may be evidence of negligence, unless there is legally sufficient evidence to show the violation was the proximate cause of the injury."

We think plaintiff's proof was clearly sufficient to allow the jury to find that Norman negligently constructed and Christine failed to inspect the wall, and that Johnny's death was the result of the collapse of that wall. What we find to be a fatal defect in appellant Underwood's case is lack of any evidence causally linking defendants' negligence to the injury suffered. Such a defect is described as a failure to prove that defendant's negligence was the proximate cause of the accident.

Because defendant in this case seeks a review of her motion for a directed verdict, plaintiff Underwood is entitled to have us view in the light most favorable to her the facts and the inferences properly deducible therefrom. It is fundamental that in a negligence action the plaintiff has the burden of proving all the facts essential to constitute the cause of action. The specific question

on which the case before us depends is whether one of these essential facts may be supplied by inference rather than direct proof.

The proof below was 1) that the wall was built in 1959 in violation of the Baltimore City Building Code, 2) some time after it was built a clothespole with clotheslines running to the house was inserted into the "cells" of the wall, and 3) in 1964 it collapsed, killing John Rosenbalm. The relation or possible relation between the negligent act in 1959, and the tragic one in 1964 is no where suggested in the direct proof. The gist of all the witnesses' testimony is that there was no substantial change apparent in the looks or stability of the wall until it collapsed four and one-half years after its construction. With no more evidence than this we conclude it was error to let the jury consider whether defendants' acts caused the injury.

It should be clarified at this point that our inquiry is directed specifically to the issue of "causation in fact" which has been regarded as an aspect of "proximate cause." W. Prosser, *Handbook of the Law of Torts*, § 41, at 240 (3d ed. 1964), 2 F. Harper and F. James, *The Law of Torts*, § 20.2, at 1110 (1956). Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although an injury might not have occurred "but for" an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury. *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A. 2d 592 (1941), or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes. *Dersookian v. Helmick*, 256 Md. 627, 261 A. 2d 472 (1970) ; *Liberto v. Holfeldt*, 221 Md. 62, 155 A. 2d 698 (1959).

Causation in fact is concerned with the more fundamental (and some have thought metaphysical) inquiry

of whether defendant's conduct *actually* produced an injury. If lay testimony together with reasonable inferences does not directly show this causal relation (such as a witness's observing a brick hurled through a plate glass window) it may be shown in a number of other ways. The most familiar method today is through the opinion of the expert who states that, based on facts in evidence, X was the efficient cause of the injury. Such opinion testimony is not always required, and the plaintiff produces legally sufficient proof to get to the jury once he shows it is more probable than not that defendant's act caused his injury. *Wilhelm v. State Traffic Comm.*, 230 Md. 91, 185 A. 2d 715 (1962) ; *Otis Elevator v. LePore*, 229 Md. 52, 57, 181 A. 2d 659 (1962). This does not mean plaintiff is required to exclude every other possible cause of the accident. *State of Maryland v. Manor Real Estate & Trust Co.*, 176 F. 2d 414 (4th Cir. 1949) ; *Wilson v. Blaustein*, 144 Md. 289, 124 A. 886 (1924). But where plaintiff by his own evidence shows two or more equally likely causes of the injury, for only one of which defendant is responsible, plaintiff can not recover. *Langville v. Glen Burnie Lines*, 233 Md. 181, 195 A. 2d 717 (1963) ; *Joffre v. Canada Dry, Inc.*, 222 Md. 1, 158 A. 2d 631 (1960). The situation before us is somewhat analogous, except that instead of showing *two evenly balanced* probable causes, plaintiff has shown none.

In the trial below plaintiff apparently relied on an inference that defendants' acts were the cause or proximate cause of the injury. An "inference" is a deduction or conclusion which reason and common sense lead a jury to draw from the facts proved. *United States v. Schneiderman*, 106 F. Supp. 906, 928 (S.D. Cal. 1952), *cf.* 21 Words and Phrases, "inference" (1960). This attempted reliance amounts to proof of causation by circumstantial rather than direct evidence. In accordance with the general rules stated above, this type of evidence is not inherently insufficient; all that is necessary is that it amount to a reasonable likelihood or probability rather than a possibility. When the claimed negligent act and

the injury are in close physical or temporal conjunction, absent a different explanation, common experience permits an inference of a cause-effect relationship. See comments a and b and illustrations, *Restatement of Torts* (Second) § 433 B, 442-44 (1965). A further suggestion along this line is that there is a trend toward liberality in allowing inferred causation where the duty or statute violated is followed closely by an injury of the type the statute or duty is intended to prevent. F. Harper and F. James, *The Law of Torts*, § 20.2 at 1113 (1956) ; W. Prosser, *Handbook on the Law of Torts*, § 41 at 247 (3d ed. 1964). However, these types of cases are on the outer limits of liability, and their results are accordingly quite diverse. In *Wilson v. Hanley*, 224 Ore. 570, 356 P. 2d 556 (1960) a timber binder chain was removed from a truck in violation of a safety statute. *Within minutes thereafter* one log rolled from the truck and crushed a logger. No testimony apparently was offered on causal relation. The court held that under those circumstances there was justification for an inference that removal of the chain was a proximate cause of the accident. Prosser, *supra* at 247, note 50, somewhat suprisingly characterizes this case as an extreme example of the liberal tendency.

The validity of an inference depends on commonly experienced relationships of acts and forces; thus spatial and temporal distances between one occurrence and another may militate against connecting them by an inference of cause and effect. Plaintiff in our case has proved too little and too much at the same time. On one hand, her expert witness did not give his opinion on what caused the wall to fall, his testimony amounting to no more than that the original construction of the wall was negligent. On the other hand, by negativing likely contributing causes shortly before the wall fell, such as the children pulling on the clotheslines, plaintiff left the jury with no data with which they could evaluate how "substantial a factor" the original negligent construction was in causing the later injury.

By offering no direct explanation of the cause of the

accident, plaintiff was compelled to rely entirely on the inference. An inference as already noted depends on logical deduction from an established fact. As the temporal distance between the established fact and a later occurrence increases, the logical force of a causal link between them diminishes. *Johnson v. Jackson,* 245 Md. 589, 594, 226 A. 2d 883 (1967). *See Restatement of Torts* (Second) § 433 where it is recognized that lapse of time is an important consideration in determining if negligent conduct is a substantial causative factor. If the negligently constructed wall had fallen immediately or soon after its construction, the inference of causal relation would be reasonable. Here the wall stood apparently unchanged and stable for four and a half years after construction. The most likely inference would seem to be that with such a length of time negligent construction was not the proximate cause of the collapse. With the limited proof in this case we hold that the glimmering of a causal connection has been extinguished by the passage of time, and direct proof is necessary to reillumine the relationship. Without other types of direct proof, the testimony of experts most frequently corrects this deficiency. To allow a jury to draw the connection now without direct proof would allow them to indulge in mere conjecture or speculation. It would amount to holding that liability may be predicated upon the mere happening of an accident which, exclusive of res ipsa loquitur situations, is not the law of Maryland. *Munzert v. American Stores,* 232 Md. 97, 192 A. 2d 59 (1963) ; *Schaub v. Community Cab, Inc.,* 198 Md. 216, 81 A. 2d 597 (1951) ; *Toy v. Atlantic Etc. Co.,* 176 Md. 197, 4 A. 2d 757 (1939).

Res ipsa loquitur situations permit an inference or presumption both of negligence and of proximate causation. This relaxation of the normal rules of proof is thought to be justified because the instrumentality causing injury is in the exclusive control of the defendant, and it is assumed he is in the best position to explain how the accident happened. *Brehm v. Lorenz,* 206 Md. 500, 112 A. 2d 475 (1955). Res ipsa is not available to help

the plaintiff here for at least two reasons. The first is that her own evidence shows unequivocally that the Petersons had demised the entire premises to the Thomases and were not in possession. *Smith v. Kelley,* 246 Md. 640, 229 A. 2d 79 (1967). Secondly, plaintiff attempted to establish specific grounds of negligence which would also preclude reliance on the doctrine. *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961).

Nothing we say in this opinion is meant to imply that time or space alone will insulate a negligent wrongdoer from liability. Once causation is established by legally sufficient evidence, the mere passage of time is no bar to recovery. 38 Am. Jur., *Negligence,* § 55 (1941); *International Derrick & Equipment Co. v. Croix,* 241 F. 2d 216 (5th Cir. 1957) defectively manufactured part of oil derrick caused injury seven years later; *Carney v. Sears, Roebuck and Co.,* 309 F. 2d 300 (4th Cir. 1962) ladder with defective rivet broke after fifteen months; *Western Union Telegraph Co. v. Preston,* 254 F. 229 (3d Cir. 1918) cert. den. 248 U. S. 585 (1919) death of telephone linesman ten years after injury; *Latham v. Des Moines Electric Light Co.,* 229 Iowa 1199, 296 N. W. 372 (1941) sewer line broke causing damage twenty-three years after defendant last actively worked on it.

Plaintiff cites several Maryland cases in which she urges that proof of causal connection has been slight. We have already indicated that slight proof is all that is necessary if it is legally sufficient to establish that it is probable the accident happened the way plaintiff claims it did. The case most favorable to plaintiff is *Austin v. Buettner,* 211 Md. 61, 124 A. 2d 793 (1956) where plaintiff recovered damages for falling down a flight of tavern steps which had been constructed some years before without an inside landing, in violation of the Anne Arundel County building code. He was unable to state exactly how the accident occurred. This case may be distinguished because the violations of the building code were negligent acts that became operative when the stairs were used by the plaintiff, creating an instantaneous causal connection.

Although this connection was established by inference, it was a permissible inference which viewed the plaintiff's normal act of walking down the stairs as setting into motion the defendant's negligence. It was rational for the jury to conclude that the violation of the statute was at least a substantial factor in bringing about the resulting harm. In the present case there are no facts showing that the use of the wall by the young decedent or anyone else activated defendant's "dormant negligence" causing the wall to collapse.

> "There are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. *Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act,* or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen." (Emphasis added.) *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 99, 185 A. 2d 715 (1962).

To allow a jury of laymen to attempt to answer the question of what caused the wall to fall four and a half years after its construction without any evidence as a guide would permit "the rankest kind of guesswork, speculation and conjecture." *Wilhelm, supra* at 101.

With our conclusion that proximate cause was not sufficiently established to make it a jury question, we find it unnecessary to consider other issues raised in this case. To what extent a city building ordinance changes and supersedes the common law relation between landlord and tenant, and when a landowner's liability to his tenants for negligent construction or repair ceases are interesting questions on which we express no opinion today. For a general discussion of a landlord's tort liabil-

ity see Rhynhart, *Notes on the Law of Landlord and Tenant,* 20 Md. L. Rev. 1 (1960).

> *Judgment in favor of Virginia Underwood against Christine Peterson reversed without a new trial. Judgment in favor of Norman Peterson affirmed. Costs to be paid by Virginia Underwood.*